UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
K.M. AND S.M., INDIVIDUALLY AND ON
BEHALF OF I.M., A MINOR,

                           Plaintiff-Appellants,

        -against-

KATONAH-LEWISOBORO UNION FREE
SCHOOL DISTIRCT,

                       Defendant-Appellee.
--------------------------------------------------------------x

**OPINION AND ORDER**

19 Civ. 9671 (PMH)(JCM)

      Plaintiffs K.M. and S.M., individually and on behalf of I.M.,[1] (together, "Plaintiffs")

presently move the Court for additional evidence to supplement the record in support of their

federal action pursuant to the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §

1415(i)(2)(C). (Docket Nos. 18, 19).[2]  Defendant Katonah-Lewisboro Union Free School District

("District" or "Defendant") opposes the motion. (Docket No. 20).  For the reasons that follow,

Plaintiffs' motion is denied.

## I.  BACKGROUND

      This is an unusual case in which Plaintiffs seek to supplement the record with a group of

photographs the Independent Hearing Officer ("IHO") took during the administrative

proceedings. (Docket Nos. 18, 19, 25-1).  In their federal appeal to this Court, Plaintiffs seek to

make these photographs part of the record.  Familiarity with the underlying facts and procedural

history of this case is presumed, as set out in the various administrative decisions rendered by the

IHO and New York State Review Officer ("SRO"). (*See* Docket Nos. 3-1, 3-2, 3-3, 3-4).

---

[1] Refers to the initials of Plaintiffs in order to protect their privacy. *See* 20 U.S.C. § 1417(c).

[2] (*See also* Docket Nos. 24, 25, 25-1) which include as exhibits the proposed additional evidence, but are otherwise duplicate filings).

**A. Statutory Framework**

This action is brought under the IDEA, 20 U.S.C. § 1415(i)(2)(A), which authorizes parents of students with disabilities the right to appeal the administrative findings of the SRO. (Docket No. 3). Under the IDEA, school districts must provide disabled children with a "free and appropriate public education" ("FAPE"). *R.E. v. N.Y.C. Dept. of Educ.*, 694 F.3d 167, 174–75 (2d Cir. 2012). To ensure that disabled children receive a FAPE, school districts must create an individualized education program ("IEP") for each such child. 20 U.S.C. § 1414(d); *see also Murphy v. Arlington Cent. Sch. Dist. Bd. of Educ.,* 297 F.3d 195, 197 (2d Cir. 2002) (describing the IEP as the "centerpiece" of the IDEA system) (internal quotations omitted). "The IEP, the result of collaborations between parents, educators, and representatives of the school district, sets out the child's present educational performance, establishes annual and short-term objectives for improvements in that performance, and describes the specially designed instruction and services that will enable the child to meet those objectives." *T.Y. v. N.Y.C. Dept. of Educ.*, 584 F.3d 412, 415 (2d Cir. 2009) (internal quotations omitted); *see also* 20 U.S.C. § 1414(d)(1)(A). "To meet these requirements, a school district's program must provide 'special education and related services tailored to meet the unique needs of a particular child, and be reasonably calculated to enable the child to receive educational benefits.'" *Gagliardo v. Arlington Cent. Sch. Dist.,* 489 F.3d 105, 107 (2d Cir. 2007) (quoting *Walczak v. Florida Union Free Sch. Dist.*, 142 F.3d 119, 122 (2d Cir. 1998)) (internal quotations omitted); *see also T.C. v. New York City Dept. of Educ.*, 15 Civ. 2667(KPF), 2016 WL 4449791, at *2 (S.D.N.Y. Aug. 24, 2016) ("The crux of the IDEA is the mandate that the IEP be 'reasonably calculated to enable the child to receive educational benefits.'") (quoting *Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist. v. Rowley*, 458 U.S. 176, 207 (1982)). Under this statutory scheme, the responsibility for

developing IEPs is assigned to local Committees on Special Education ("CSEs"). *See* N.Y. Educ. Law § 4402(1)(b)(1); *R.E.*, 694 F.3d at 175.  CSEs are comprised of members appointed by the local school district's board of education, the student's parents, a regular or special education teacher, a school board representative, and others. *See* N.Y. Educ. Law § 4402(1)(b)(1)(a).  The IEP must be "likely to produce progress, not regression, and … must afford[] the student with an opportunity greater than mere trivial advancement." *T.P. ex rel. S.P. v. Mamaroneck Union Free Sch. Dist.*, 554 F.3d 247, 254 (2d Cir. 2009) (internal quotations omitted).  Moreover, the student's IEP must be provided in the "Least Restrictive Environment," which provides that "[t]o the maximum extent appropriate, children with disabilities ... are educated with children who are not disabled." 20 U.S.C. § 1412(a)(5)(A).

Parents who believe their child's IEP does not comply with the IDEA may file a "due process complaint" against the school district. 20 U.S.C. § 1415(b)(6); *see also R.E.*, 694 F.3d at 175 (noting that such a complaint is a "type of administrative challenge unrelated to the concept of constitutional due process").  In such cases, the IDEA mandates that the state provide "impartial due process hearings," 20 U.S.C. § 1415(f), before an IHO, N.Y. Educ. Law. § 4401(1).  Either party may then appeal the case to the SRO. *Id.* § 4404(2).  The SRO decision may then be challenged by either party in federal court. 20 U.S.C. § 1415(i)(2)(A).  Parents who believe that the state has failed to offer their child a FAPE may transfer their student to private schooling and seek tuition reimbursement from the school district while the administrative process is pending. *See T.M. ex rel. A.M. v. Cornwall Cent. Sch. Dist.*, 752 F.3d 145, 152 (2d Cir. 2014).  The parents will be entitled to reimbursement if: "(1) the school district's proposed placement violated the IDEA, (2) the parents' alternative private placement was appropriate, and (3) equitable considerations favor reimbursement." *Id.*; *see also R.E.*, 694 F.3d at 184-85 (same).

**B. Factual Background**

Plaintiffs are the parents of I.M., a 17-year-old girl who requires special education and related services under the IDEA. (Docket No. 3 ¶ 14).  When I.M. was in ninth grade, Defendant placed her in John Jay High School's ("John Jay") "Life Skills Program" for the 2016-2017 school year. (*Id.* ¶¶ 42-44).  Since at least 2008, this program took place in a single, isolated classroom, located in a hallway on the basement level of the building (the "Classroom"). (*Id.* ¶ 45).  The Classroom was the only one in that basement hallway (the "Hallway"). (*Id.*).  The Hallway allegedly contained "excess boxes, storage material, scaffolding and encroached on the Exits at either end of the hallway creating an unsafe condition for the special education students that the District housed in its [Classroom]." (*Id.*).  Plaintiffs were concerned about the location of the Classroom, because, among other reasons, I.M. was segregated from her nondisabled peers, she was included with students many years older than she, the designated exit paths in the Hallway were blocked by storage items, and Plaintiffs believed the location of the Classroom in the basement threatened I.M.'s overall physical and emotional safety. (*Id.* ¶ 46).

On September 16, 2016, Plaintiffs sent a letter to the District expressing their concerns, and requesting that the Hallway be cleared for safety. (Docket No. 3 ¶ 46).  Plaintiffs were also concerned about I.M.'s educational progress and transition to ninth grade. (*Id.* ¶¶ 48-52).  After months of discussion between Plaintiffs and the District regarding Plaintiffs' concerns for their daughter's educational progress and overall appropriateness of her IEP, the District allegedly refused to consider alternative instructional strategies, learning models, or methodologies, and instead placed blame on I.M. for her apparent "regression." (*Id.* ¶ 53).  On February 2, 2017, after the CSE further indicated it would not consider any meaningful changes to I.M.'s IEP, Plaintiffs informed the District of their intention to unilaterally place I.M. at Fusion Academy in

Stamford, CT, and that they would seek tuition reimbursement and related expenses. (*Id.* ¶ 54). Thereafter, on February 6, 2017, I.M. began attending Fusion Academy, where she made substantial progress. (*Id.* ¶¶ 55-58). Plaintiffs continued I.M.'s placement at Fusion Academy for the 2017-2018 academic year. (*Id.* ¶ 59).

## C. Administrative Proceedings

### 1. Due Process Hearing and IHO Determination

On August 30, 2017, Plaintiffs filed their due process complaint against the District for its failure to provide I.M. a FAPE for the 2015-16, 2016-17 and 2017-18 school years. (Docket No. 3 ¶ 60). In response to Plaintiffs' complaint, hearings were scheduled before an IHO at John Jay. (*Id.* ¶ 61). During the hearings, which took place over approximately 19 days between the months of December 2017 and September 2018, both parties offered hundreds of pages of documentary evidence and testimony in support of their cases. (*Id.*); (*see also* Docket No 3-1 at 2). Plaintiffs testified on behalf of themselves, and also presented the testimony of, *inter alia*, a speech language pathologist and a director of a diagnostic center. (Docket No. 3-1 at 2). They also presented a plethora of documentary evidence, including photographs depicting the Hallway from September 2017. (*Id.* at 7-8, 12, 20, 27). Those testifying on behalf of Defendant included, among others, I.M.'s teacher at John Jay, a clinical social worker for the District, and the special education supervisor for the District. (*Id.* at 3). On the third day of testimony, Plaintiffs asked the IHO to visit the Classroom and surrounding area to "see for himself." (*Id.* at 17). The District agreed to this request. (*Id.* at 18). That day, the IHO visited the Hallway and the Classroom. (*Id.*). He "took pictures to refresh [his] memory," and then went back to the hearing. (*Id.* at 19, 24). Thereafter, every time a hearing was held at John Jay, the IHO "made a point to

check" on the condition of the Hallway, and apparently took more photographs for his own use. (*Id.* at 24).  Neither party requested that he take these photographs.

The IHO issued a decision, dated December 14, 2018, holding that: (1) the District did not provide a FAPE in the Least Restrictive Environment to I.M. for the 2016-17 and 2017-18 school years; (2) Fusion Academy is an appropriate placement for I.M.; and (3) the District is required to reimburse Plaintiffs for tuition and related expenses for I.M.'s placement at Fusion Academy from February 6, 2017 through the 2017-18 school year and subsequent years [limited by graduation or age 21] necessary to bring I.M. to the functioning she would have achieved had the District provided appropriate services and support.[3] (Docket No. 3-1 at 20-29).  The IHO found, in relevant part, that the isolation of the Classroom had an adverse impact on I.M.'s education because the students with disabilities were segregated from students who did not have disabilities. (*Id.* at 22).  He also noted that the Hallway was "cluttered with building material and equipment," as shown in the photos submitted by Plaintiffs. (*Id.* at 20).  The IHO further found that I.M. should not have been placed in the Life Skills class with students who were 18 to 21 years old. (*Id.* at 23).

The IHO also discussed the safety risks posed by the condition of the Hallway outside of the Classroom, noting that "[t]he area between the interior and exterior EXIT doors … was crammed with building supplies, material and equipment … containing objects looking very much like the objects shown in the photos in Parents' Exhibit III." (Docket No. 3-1 at 23-24). The IHO further noted that "the very long step ladder shown on the right side of the [H]allway in the photos looked very similar to the ladder I saw in the EXIT vestibule." (*Id.* at 24).  He stated that as the year unfolded, the school staff began storing supplies and equipment in the Hallway in

---

[3] The IHO dismissed Plaintiffs' claim relating to the 2015-16 school year on the ground that it is barred by the statute of limitations. (Docket No. 3-1 at 28).

front of the interior EXIT doors. (*Id.*).  The IHO explained that the boxes and storage in the

Hallway posed risks in case of an emergency, and that the "conditions at the end of the hallway

in front of [I.M.'s] [C]lassroom and in the EXIT vestibule are completely unacceptable." (*Id.*).

The IHO also found that despite extra room for students "in the mainstream" of John Jay, I.M.

and her classmates continued to be kept in the "basement/lower level, segregated from their

peers who do not receive special education." (*Id.* at 24-25).  Finally, the IHO found that it was

doubtful that the Classroom was actually "designed to be a classroom," as it was "deliberately

designed in a single classroom segregated from the rest of the school in the basement/lower level

opposite the Boiler Room." (*Id.* at 25).  Instead, he stated, it is "possible that this Classroom was

meant to be a storage room." (*Id.*).

**2.  District's First Appeal to the Office of State Review**

The District appealed this decision to the SRO. (Docket No. 3 at ¶ 67).  By decision dated

March 11, 2019, the SRO reversed the portion of the IHO's decision which found that the

District failed to offer I.M. a FAPE due to the physical location of the Classroom and the age

range of her peers. (Docket No. 3-2).  The SRO found, in relevant part, that the IHO's concerns

relating to safety were hypothetical and improper in an IDEA determination. (*Id.* at 20-21).  The

SRO remanded the matter to the same IHO to determine whether the District offered I.M. a

FAPE as it related to the appropriateness of I.M.'s IEPs. (*Id.* at 22-23).

**3.  Second IHO Decision**

After remand, the IHO issued a second decision on April 15, 2019 finding that the

District failed to provide I.M. with an appropriate IEP for the 2016-17 and 2017-18 school years.

(Docket No. 3-3 at 15).  The IHO also reiterated his prior findings that: (1) the District failed to

provide I.M. with a FAPE for the 2016-17 and 2017-18 school years in the Least Restrictive

Environment; (2) Fusion Academy was an appropriate placement for I.M.; and (3) equitable considerations weighed in favor of Plaintiffs for tuition reimbursement. (*Id.*).

**4.  District's Second Appeal to the Office of State Review**

The District appealed the IHO's second decision to the SRO, arguing that the IHO erred in finding the District failed to monitor I.M.'s academic progress. (Docket No. 3 ¶ 70).  By decision rendered June 27, 2019, the SRO reversed the IHO's decision, finding that the District provided I.M. with a FAPE for the 2016-17 and 2017-18 school years by identifying and developing appropriate IEPs for I.M., and adequately monitoring her progress. (Docket No. 3-4 at 51-52).  The SRO also held that the District was not required to reimburse I.M. for tuition reimbursement. (*Id.*).

**D.  Instant Action**

In the instant action, Plaintiffs seek a judgment, *inter alia*, affirming the IHO decisions, which held that the IEPs offered by the District were inappropriate and that the District failed to provide I.M. with a FAPE in the Least Restrictive Environment for the 2016-2017 and 2017-2018 school years. (*See* Docket No. 3 ¶¶ 99-107).  Presently before the Court is Plaintiffs' motion to supplement the administrative record, pursuant to 20 U.S.C. § 1415(i)(2)(C)(ii), with the addition of a dozen photographs taken by the IHO during his visits to the Classroom and Hallway. (Docket Nos. 18, 19).  For the reasons that follow, Plaintiffs' request is denied.

**II.  DISCUSSION**

**A.  Legal Standard**

In an action brought to review an SRO's determination of whether a student has been denied a FAPE under the IDEA, the [district] court "(i) shall receive the records of the administrative proceedings; (ii) shall hear additional evidence at the request of a party; and (iii)

8

basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate." 20 U.S.C. § 1415(i)(2)(c); *see also Eschenasy v. New York City Dept. of Educ.,* 604 F. Supp. 2d 639, 646 (S.D.N.Y. 2009) (same).  "The taking of additional evidence is a mater *(sic)* ... left to the discretion of the trial court." *M.B. v. New York City Dept. of Educ.*, No. 14-CV-3455(LTS)(JCF), 2015 WL 6472824, at *2 (S.D.N.Y. Oct. 27, 2015) (internal quotations omitted).

"While the Second Circuit has yet to address the standard for admitting additional evidence in an IDEA case, courts within this district have adopted the approach articulated by the First Circuit in *Town of Burlington v. Dept. of Educ. for Mass.,* 736 F.2d 773 (1st Cir. 1984)." *M.B.*, 2015 WL 6472824, at *2; *see also Eschenasy,* 604 F. Supp. 2d at 649 (same). "In *Burlington,* the First Circuit held that the administrative record should be the main source of evidence with limited additions, but rejected a rigid rule that would 'unduly limit' the reviewing court's discretion." *Eschenasy,* 604 F. Supp. 2d at 649 (quoting *Burlington,* 736 F.2d at 790–91). "Rather, the First Circuit adopted a rebuttable presumption prohibiting additional evidence that was not presented during the administrative proceedings below." *Id.* (citing *Burlington*, 736 F.2d at 791).  In applying this standard, the court must "weigh heavily the important concerns of not allowing a party to undercut the statutory role of administrative expertise, the unfairness involved in one party's reserving its best evidence for trial, the reason the witness did not testify at the administrative hearing, and the conservation of judicial resources." *Burlington,* 736 F.2d at 791.  Moreover, the district court should only consider "additional" evidence that is "relevant, non-cumulative, and useful." *Eschenasy,* 604 F. Supp. 2d at 649 (internal quotations omitted); *see also Jordan S. v. Hewlett Woodmere Union Free Sch. Dist.,* No. 08 Civ. 1446(LDW)(AKT), 2009 WL 910804, at *2 (E.D.N.Y. Mar. 31, 2009) (noting that the "IDEA does not permit a

9

party ... to duplicate testimony already provided at the administrative hearing.").  Thus, "[t]he party seeking to supplement the record bears the burden of establishing that the additional evidence is probative of the issues before the court, and must also explain why the evidence was not presented at the administrative level." *M.B.*, 2015 WL 6472824, at *2 (internal quotations omitted); *see also Plainville Bd. of Ed. v. R.N.*, No. 3:09-CV-241(RNC), 2009 WL 2059914, at *1 (D. Conn. July 10, 2009) ("The party moving to submit additional evidence must establish that it is relevant and necessary.").

In deciding whether to admit additional evidence, a court must "be careful not to allow such evidence to change the character of the hearing from one of review to a trial de novo." *Burlington,* 736 F.2d at 791.  "Indeed, courts have recognized that a 'lenient standard for additional evidence would have the consequence of making the whole IDEA process more time consuming, as parties scrambled to use the federal court proceeding to patch up holes in their administrative case.'" *M.B.*, 2015 WL 6472824, at *2 (quoting *Genn v. New Haven Bd. of Educ.*, No. 3:12-CV-00704(CSH), 2015 WL 1064766, at *4 (D. Conn. Mar. 11, 2015)) (internal quotations omitted).

**B.  Application**

Plaintiffs seek to supplement the administrative record with a dozen photographs taken by the IHO over the course of the hearings, and referenced in his opinions, of the condition of the Hallway outside the Classroom. (Docket No. 19 at 3); (*see also* Docket No. 3-1 at 19, 24). Plaintiffs argue that "[a]lthough the IHO took these photographs and referenced the conditions of the basement hallway when rendering his opinion, for reasons unbeknownst to the parties, he did not introduce the photographs into evidence during the hearings as Hearing Officer exhibits." (Docket No. 19 at 3).  Plaintiffs maintain that these photographs are relevant because they relate

to Plaintiffs' concerns over the physical condition of the proposed IEP, they were not withheld in bad faith, and they are useful in supporting the basis for the IHO's opinions that the District failed to provide I.M. with a FAPE in the Least Restrictive Environment. (*Id.* at 4). Specifically, Plaintiffs argue that although the photographs were taken after I.M. left John Jay, the "District's misuse of the [H]allway several months after [Plaintiffs] [] expressed their concerns regarding the physical condition of the [H]allway" demonstrates the District's disregard for students with disabilities, and use of the Hallway as a "dumping ground for school property from reams and reams of paper, to ladders and chairs, to broken furniture." (Docket No. 18 at 2). Plaintiffs also maintain that they were "unaware of the photographs until learning of them in the IHO's Decisions []." (*Id.*).

Defendant opposes the admission of these photographs, arguing they are irrelevant and that Plaintiffs could have offered their own photographs, in addition to the ones they did offer. (Docket No. 20 at 8-12). First, Defendant maintains that the IHO's photographs are not relevant since neither the location of the Classroom nor the state of the Hallway are valid considerations under the IDEA for determining the appropriateness of the District's proposed placement. (*Id.* at 9-10). Defendant further argues that the photographs all concern the condition of the Hallway at John Jay, and that this criticism is "immaterial to the question of the appropriateness of the student's IEP and of Plaintiffs' ability to recover tuition reimbursement." (*Id.* at 10).

Defendant also contends that neither the IHO's reported observations about the difficulty of evacuating in an emergency nor the photographs demonstrate that I.M. would have been imperiled in an emergency. (Docket No. 20 at 10-11). In support of this argument, Defendant maintains that the photographs were taken over one year after I.M. left John Jay, and the appropriateness of the District's fire evacuation procedures were not an issue at the impartial

hearing. (*Id.* at 11).  Defendant also claims that the photographs have no bearing on the issue of "restrictiveness" because "[p]hotographs of a school hallway are simply not probative of whether the particular student in this case was provided services in the least restrictive environment, a question that concerns the student's individual need for special classes and her removal from general classes with non-disabled peers." (*Id.*).

Second, Defendant argues that Plaintiffs should not be permitted to "belatedly" introduce the IHO's photographs into evidence because Plaintiffs "were fully capable of seeking permission from the IHO to take additional photographs of the lower level hallway" and of "seeking to introduce such photographs into evidence at the administrative impartial hearing." (Docket No. 20 at 11-12).  If the IHO granted such a request, the District asserts it would have had the opportunity to object on the record, to cross-examine the photographer or elicit other information about the time and manner of the photography, and to introduce its own evidence on the state of the Hallway and its evacuation procedures. (*Id.* at 12).

The Court finds that Plaintiffs have failed to satisfy their burden of demonstrating that supplementing the record with the IHO's photographs is warranted.  The IHO photographs of the condition of the Hallway after I.M. left John Jay are of limited relevance to the adequacy of her IEP. *See R.E.*, 694 F.3d at 187 (which held that "[i]n determining the adequacy of an IEP, both parties are limited to discussing the placement and services … reasonably known to the parties at the time of the placement decision[,]" and not "at some later date.") (internal quotations omitted).  To be clear, the Court is not ruling that evidence of the physical condition of a classroom or its surroundings can never be relevant. *See, e.g., T.Y.*, 584 F.3d at 420 (which held that the IDEA provides parents a meaningful participation in the "educational placement" of the educational program in which the child is placed, which implicates "the general environment of

12

the overall program.").  Here, however, the condition of the Hallway after I.M. left is not

relevant.

  The Court also finds that these photographs are cumulative.  During the administrative

proceedings, Plaintiffs introduced photographs they took in September 2017 showing the

condition of the Hallway to support their claim that the District did not provide I.M. with a

FAPE in the Least Restrictive Environment. (*See* Docket No. 3-1 at 11-12, 20-21, 24).  In

addition to these photographs, Plaintiffs elicited testimony relating to the alleged "unsafe and

overly restrictive" conditions in the Hallway that "existed while school was in session." (*Id.* at

3).  Thus, Plaintiffs' proposed additional evidence of a dozen photographs of the Hallway would

not significantly add to Plaintiffs' claims because similar evidence is already in the record. *See*

*Eschenasy*, 604 F. Supp. 2d at 649 (which denied motion to submit additional evidence in the

form of affidavit where "it does not add any significant information not already in the record.");

*R.H. v. Bd. of Educ. of Saugerties Cent. Sch. Dist.*, 1:16-CV-551(GLS)(CFH), 2017 WL 401237,

at *4 (N.D.N.Y. Jan. 30, 2017) (which denied motion to supplement record with a letter that

came a year and a half after other letters were already submitted into evidence, was not

"substantially distinguishable," and did not "add any significant information not already in the

record and is of little probative value.").  Accordingly, the Court considers such evidence to be

cumulative.

  Plaintiffs have also failed to sufficiently explain their failure to offer additional

photographs of the Hallway into evidence, other than simply stating that they were "unaware of

the photographs until learning of them in the IHO's [d]ecisions[]." (Docket No. 19 at 3).

Although the Court does not find Plaintiffs knew of the IHO's photographs during the

administrative hearings, there is no reason why Plaintiffs could not have offered their own

additional photographs of the Hallway into evidence.  This would have provided Defendant an

opportunity to object to such evidence or conduct cross-examinations in its defense.  Moreover,

the admission of these photographs now could cause unnecessary delay in proceeding with the

case.[4] *See R.H.,* 2017 WL 401237, at *5 (which denied admission of additional evidence where it

would cause delay due to discovery on the issue, noting that "unless the Court allows for

discovery not previously contemplated, the District will be unable to cross examine" regarding

such evidence); *Plainville Bd. of Ed.*, 2009 WL 2059914, at *2-3 (D. Conn. July 10, 2009)

(which denied the school district's motion to admit additional evidence where such evidence was

of "limited probative value" and could cause delays in the proceeding due to discovery on the

issue).  In conclusion, because Plaintiffs have failed to show that the photographs are

noncumulative, useful, relevant, and necessary, the Court finds they have failed to overcome the

rebuttable presumption of foreclosing additional evidence. *See R.H.,* 2017 WL 401237, at *6.

Accordingly, Plaintiffs' motion for additional evidence is denied.

## III.  CONCLUSION

For the foregoing reasons, Plaintiffs' motion to submit additional evidence is denied.

The Clerk is respectfully requested to terminate the pending motion (Docket Nos. 18, 24, 25).

Dated:   July 17, 2020
             White Plains, New York

**SO ORDERED:**

JUDITH C. McCARTHY
United States Magistrate Judge

---

[4] There may also be an evidentiary issue relating to the authentication of the photographs since the photographs were taken by the factfinder at the due process hearing that is the subject of the instant matter. *See M.N. v. New York City Dept. of Educ., Region 9 (Dist. 2)*, 700 F. Supp. 2d 356, 361 n.3 (S.D.N.Y. 2010) (which declined to consider additional evidence submitted by the plaintiffs where the document had not been authenticated and was not relevant to the issue of whether the defendant provided plaintiff with a FAPE).